UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RONALD HOOD                                                    PETITIONER

VERSUS                          CIVIL ACTION NO. 5:11CV15-DCB-RHW

RON KING                                                       RESPONDENT

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

On February 10, 2011, Ronald Hood filed a [1] Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence.

Pending before the Court is Hood's original petition.  Respondent filed an [12] answer to the

petition on August 25, 2011.  On May 23, 2012, Hood then filed a [15] Motion to Amend his

Petition for Writ of Habeas Corpus, which is also currently pending.  The motion to amend

encompasses some of the claims in the original petition, but also raises entirely new claims.

Then on December 14, 2012, Petitioner filed a 25-page pleading which he styled as a "Writ of

Habeas Corpus Relief Brief" ("brief").  *See* doc. [23].  Many of the claims raised in this pleading

are alleged in neither his original petition nor motion to amend.  In addition to these pleadings,

Hood has filed a [24] Motion to Suppress Evidence, [25] Motion for 2nd Mental Examination and

Competency Hearing, and [29] Motion for Evidentiary Hearing.  The undersigned will address

each of these pleadings and motions in this report and recommendation.

**Procedural Background**

Hood was charged with the crime of exploitation of children in violation of Miss. Code

Ann. §§ 97-5-31 and 99-5-33(5).  *See Hood v. State of Mississippi*, 17 So.3d 548, 550 (Miss.

2009).  He was tried before a jury and convicted.  The trial court sentenced Hood as an habitual

offender to a 20-year prison term.  *Id.*  Two videotapes depicting nude, male children served as

the basis of Hood's conviction. Hood's wife, Melissa Hood, found the first videotape in their home and turned it over to Detective Larry Davis of the Yazoo City Police. Detective Davis obtained a search warrant for a storage unit belonging to Petitioner. A search of the storage unit turned up a second videotape that also featured nude, male children. *Id.* at 550-51.

Counsel for Petitioner filed a pre-trial motion to dismiss the indictment, arguing that the children in the videotapes were not engaged in lewd, lascivious or "sexually explicit conduct" as required by the criminal statute. Doc. [13-1] at 13-14. The trial court reserved ruling on the motion until after the close of the state's evidence, at which time counsel renewed and the trial court denied the motion. Doc. [13-2] at 78, 131-34. In other pre-trial motions, counsel asserted that Melissa Hood's testimony should be barred based on the marital privilege and that the videotapes should be excluded from evidence as "fruit of the poisonous tree". Doc. [13-1] at 13-14, 18. The trial court denied these motions at trial. Doc. [13-2] at 77. Pursuant to a separate motion, the trial court ordered that Hood submit to a mental examination. Doc. [13-1] at 24-26. W. Criss Lott, a clinical psychologist, performed the mental examination and drafted a report detailing Hood's understanding of the proceedings against him and his ability to participate in the proceedings. *Id.* at 29-36.

At trial counsel for Petitioner argued *inter alia* that there was no proof that Hood possessed the videotapes. He also argued that the children in the videotapes were not engaged in "sexually explicit conduct". The prosecution countered that Hood had constructive possession of the videotapes by virtue of their being found in his home and in a storage unit that he owned. The prosecution also argued that the videotapes met the definition of "sexually explicit conduct" because the videos focused attention on the genitalia of the subjects. *See* doc. [13-2] at 84-91;

[13-3] at 16-38.  The jury returned a guilty verdict.

Following his conviction and sentence, Hood filed a direct appeal to the Mississippi Supreme Court, in which he asserted the following claims:  (1) whether the marital privilege caused Melissa Hod to be incompetent to testify; (2) whether the males in the video were engaged in "sexually explicit conduct"; (3) whether the statutes in question are unconstitutionally vague; and (4) whether the prosecution made improper arguments which tended to inflame the passions and prejudices of the jury against Hood.  *See Hood*, 17 So.3d at 551.  The Mississippi Supreme Court affirmed the conviction and sentence.  *Id.* at 557-58.

Having completed his direct appeal, Hood filed three additional state court pleadings that addressed the merits of his conviction and sentence.  On June 17, 2010, Hood filed a Motion for Post-Conviction Collateral Relief.  Doc. [13-4] at 33-136.  By order dated July 21, 2010, the Mississippi Supreme Court denied the motion.  *Id.* at 27.  On August 9, 2010, he filed a Motion for Reconsideration of Application for Leave to Proceed in the Trial Court.  *Id.* at 4-22.  On August 25, 2010, the Mississippi Supreme Court denied this motion.  *Id.* at 3.  Hood then filed a second Motion for Post-Conviction Relief on September 14, 2010, which the Mississippi Supreme Court determined was procedurally barred as a successive writ.  *Id.* at 162, 165-94.  On February 10, 2011, Hood filed the § 2254 petition which is now pending before the Court.

In the original § 2254 petition, Hood raised the following claims:  (1) whether the marital privilege rendered Melissa Hood incompetent to testify; (2) whether the children in the videos were engaged in "sexually explicit conduct" and whether there was evidence that they were under the age of 18; (3) whether the statutes of conviction were constitutionally vague; (4) whether the prosecution made improper statements in opening and closing arguments; (5) whether the trial

court erred by allowing the introduction of a videotape into evidence; (6) whether Petitioner was denied a fair trial because he was denied the right to view and inspect evidence against him; (7) whether Petitioner was denied constitutionally effective assistance of counsel because (a) counsel failed to object to the prosecution's improper remarks, (b) counsel failed to object to the introduction of a videotape that had been tampered with; (c) counsel failed to move that Hood be allowed to watch the videotapes during trial; and (d) counsel failed to adequately pursue a competency hearing. Although not listed in the enumerated grounds of his habeas petition, Petitioner indicated that in the alternative he would like to accept the prosecution's plea offer, which he asserts "trial counsel failed to advised [sic] petitioner into going to trial instead of taking the state six (6) year plea". Doc. [1] at 25.

In the [15] motion to amend, filed on May 23, 2012, Petitioner asserted the following claims: (1) whether counsel was ineffective based on counsel persuading petitioner to go to trial instead of accept a plea offer; (2) whether Petitioner was denied a fair trial because he was not allowed to inspect evidence against him; (3) whether the indictment was improperly read to the jury; (4) whether the indictment was defective because it read "video" and not "videos"; (5) whether the prosecution made improper remarks and referred to Petitioner by derogatory names; (6) whether jury instruction S-5 was improper; (7) whether witnesses tampered with and tainted a videotape used in evidence against Petitioner; (8) whether Petitioner was denied discovery; (9) whether the trial court erred in failing to conduct a competency hearing; (10) whether counsel was ineffective in failing to investigate Petitioner's history of mental illness and failing to request a hearing to determine Petitioner's competence to stand trial; and (11) whether Petitioner is entitled to an evidentiary hearing on the issue of counsel's deficient performance.

In the [23] pleading filed on December 4, 2012, which the Court construes as a further attempt by Petitioner to amend his petition, he raises the following claims: (1) whether his attorney rendered ineffective assistance of counsel; (2) whether the marital privilege rendered Melissa Hood incompetent to testify; (3) whether the indictment was defective because it read "video" and not "videos"; (4) whether Petitioner was competent to stand trial or to make a rational decision whether to go to trial or accept the prosecution's plea offer; and (5) whether there was sufficient evidence to demonstrate that Plaintiff was in possession of the videotapes.

## Motions to Amend

Motions to amend are governed by Fed. R. Civ. P. 15.  *See also* 28 U.S.C. § 2242 (habeas corpus petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions.").  Rule 15(a) provides that leave to amend shall be freely given when justice so requires.  A court may deny leave to amend a § 2254 petition where necessary to thwart tactics that are dilatory, unfairly prejudicial, or otherwise abusive.  *See Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010); *Littlejohn v. Artuz*, 271 F.3d 360, 361 (2d Cir. 2001).

Petitioner filed a [15] motion to amend approximately nine months after Respondent filed the response to the original habeas petition.  Petitioner filed the [23] "brief" asserting many new claims approximately 15 months after Respondent filed the response to the original habeas petition.  Petitioner has failed to explain the reason for this considerable delay in seeking leave to amend, particularly in light of the fact that virtually all of these same claims were raised in state court pleadings prior to the filing of Hood's § 2254 petition.  Hence, the undersigned finds that Petitioner has been dilatory and displayed undue delay in his efforts to amend the original habeas petition.  Delay alone may not be sufficient to deny a motion to amend.  *See Moore-El v.*

*Luebbers*, 446 F.3d 890, 901-02 (8th Cir. 2006); *Long v. Wilson*, 393 F.3d 390, 400-01 (3d Cir. 2004). Nevertheless, in this case, Hood waited until long after Respondent had answered the petition before raising claims that were known to Hood well in advance of his filing the original § 2254 petition. Hood offers no adequate explanation for this delay. As such, the undersigned finds that the motion to amend may be denied on this basis alone.

In order to allow amendment to a habeas petition, the claims raised in the amendment must relate back to the original pleading. A newly asserted claim relates back to a claim raised in the original habeas petition if it arose out of the same "conduct, transaction, or occurrence"; that is, "a common core of operative facts" must unite the original claim and the newly asserted claim. *See* Fed. R. Civ. P. 15(c)(1)(B). Claims raised in an amendment do not automatically relate back merely because they arose out of the same trial and conviction. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005). The Supreme Court has explained that amendments do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* An amended petition, raising discrete claims unrelated to the claims in the original habeas petition, and which is filed after the expiration of the AEDPA's one-year limitation period, does not relate back to the date of the filing of the original petition under Fed. R. Civ. P 15(b). *See id.* at 654. It is undisputed that Petitioner's [15] motion to amend and [23] "brief" asserting new claims were filed after the expiration of the AEDPA's one-year limitation period.[1] Hence, it is necessary for the Court to compare the claims asserted in

---

[1] Respondent calculates that Petitioner's amended petition would have been due on or before March 17, 2011, to fall within the AEDPA's one-year limitation period. *See* doc. [16] at 3-4. Petitioner did not file the [15] motion to amend until May 23, 2012, long after the AEDPA's one-year deadline had expired.

Petitioner's original habeas petition, filed on February 10, 2011, against the claims asserted in his amended pleadings filed on May 23, 2012, and December 4, 2012.

The undersigned finds that many of the issues and allegations stated in Petitioner's amended pleadings simply restate arguments in the original habeas petition. In some cases Petitioner expands upon previous arguments. However, there are several new claims raised for the first time in these untimely motions to amend. The undersigned concludes that the motion to amend should be denied to the extent that the following claims do not relate back to the original petition: (1) whether the indictment was improperly read to the jury; (2) whether the indictment was defective because it read "video" instead of "videos"; (3) whether jury instruction S-5 was improper; (4) whether Petitioner was denied discovery; and (5) whether there was sufficient evidence to demonstrate that Petitioner was in possession of the videotapes.

Petitioner also has raised numerous claims of ineffective assistance of counsel, both in the original petition and in subsequent attempts to amend. Only five of these claims of ineffective assistance of counsel were raised in the original petition. The undersigned will address the ineffective assistance of counsel claims in a separate section. The undersigned will now turn to the claims asserted in Petitioner's original pleading, considered in conjunction with arguments and case law asserted in his motions to amend as they may apply.

**Standard of Review**

This Court must consider Hood's claims in light of the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).

28 U.S.C. § 2254 (d) provides:

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal habeas courts review claims addressing questions of law or mixed questions of law and fact that were adjudicated on the merits in state court only when subsection (d)(1) applies. *See Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 2000). Thus, a state court decision on the merits of a mixed question of law and fact will be reviewed only upon a showing that the decision was contrary to federal law or involved unreasonable application of federal law. A state court decision is contrary to federal law when it is opposite to a United States Supreme Court decision and when it is at variance with a Supreme Court decision upon "materially indistinguishable facts." *See Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves unreasonable application of federal law when the state court properly identifies the applicable federal principle but applies it in an objectively unreasonable manner. *Id*. at 409. Federal habeas courts presume that state court factual findings are correct unless the findings are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir. 2000).

### (1) Marital Privilege

Petitioner argues that his wife Melissa Hood was not competent to testify by virtue of the marital privilege. The Fifth Circuit has rejected the argument that marital privilege is

constitutionally based. Rather, the Fifth Circuit has concluded that the marital privilege is an evidentiary rule and a matter of state law. *See Port v. Heard*, 764 F.2d 423, 430 (5th Cir. 1985)(citing *La Roche v. Wainwright*, 599 F.2d 722, 726 (5th Cir. 1979)). "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). When reviewing state court evidentiary rulings, a federal habeas court is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998).

The Mississippi Supreme Court reviewed this issue on direct appeal and found it to be without merit. *See Hood*, 17 So.3d at 552. Specifically, the Mississippi Supreme Court noted that Mississippi Rule of Evidence 504(d) provides that the marital privilege does not apply when one spouse is charged with a crime against "the person of any minor child". *Id.* Furthermore, under M.R.E. 601, a spouse is competent to testify when the other spouse is being prosecuted for "a criminal act against any child." *Id.* The Mississippi Supreme Court also concluded that Melissa Hood testified about conversations that were prior to their marriage or that took place in the presence of third persons; therefore, the conversations were not protected as confidential. *Id.* At most, Petitioner has asserted an erroneous application or interpretation of state law by the Mississippi Supreme Court. A mere error in state law does not rise to the level of a due process violation. *See Engle v. Isaac*, 456 U.S. 107, 121 & n.21; *Williams v. Foti*, 813 F.2d 700, 701-02 (5th Cir. 1987). Hood has not explained how the Mississippi Supreme Court's decision was contrary to, or involved an unreasonable application, of clearly established Federal law. Nor has

Hood identified an error that is so extreme that it rendered his trial fundamentally unfair. Thus, the undersigned finds this claim to be without merit.

### (2) "Sexually Explicit Conduct"

Petitioner argues that the children depicted in the videos were not engaged in "sexually explicit conduct" as required by Miss. Code Ann. § 97-5-31 and 97-5-33(5). Although the children in the videotapes were naked, Hood asserts that their behavior does not fit the definition of lewd, lascivious, or sexually explicit. He also argues that there was no evidence that any of the children were under 18 years of age.

With respect to the interpretation of "sexually explicit conduct", Petitioner is merely challenging the state court's interpretation of state law, which ordinarily does not rise to the level of a constitutional violation. *See Bronstein v. Wainwright*, 646 F.3d 1048, 1050 (5th Cir. 1981). Rather, on federal habeas review, the federal court is bound by the state court's interpretation of a state criminal statute. *Id.* In ruling on Petitioner's direct appeal from conviction, the Mississippi Supreme Court addressed this very issue and noted that "sexually explicit conduct" is defined in Miss. Code Ann. § 97-5-31(b)(v) as "lascivious exhibition of the genitals or pubic area of any person." *Hood*, 17 So.3d at 555. The state court then relied on the Fifth Circuit's test stated in *United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001), and concluded that the conduct depicted in the videotapes constituted sexually explicit conduct. *Hood*, 17 So.3d at 555-56. Petitioner has failed to identify any error of constitutional magnitude with respect to the Mississippi Supreme Court's interpretation of a Mississippi criminal statute. Accordingly, the undersigned finds that his claim is without merit.

Petitioner also argues that there was no evidence that the children in the videos were

under 18 years of age, as required by the statute. This issue was actually presented to the state trial court. Defense counsel moved to dismiss based on the lack of proof that the children were under the age of 18. *See* doc. [13-3] at 12-13. However, defense counsel conceded that in one of the videos, the narrator mentioned that he was 14 years old. *Id.* The trial court denied the motion. *Id.* at 15. There was additional testimony from Melissa Hood and Detective Davis who opined that the boys in the videotape were younger than 18 years of age. *See* doc. [13-2] at 107, 126. The trial court instructed the jury that in order to convict, it must find beyond a reasonable doubt that the videotape depicted "any male child under the age of eighteen years engaging in sexually explicit conduct." Doc. [13-1] at 46. The jurors watched the videotapes and were free to draw their own conclusions regarding the ages of the boys depicted in the video. Based on the foregoing, and given defense counsel's concession that at least one of the boys was under the age of 18, the undersigned finds Petitioner's argument to be without merit.

### (3) Unconstitutionally Vague Statutes

Petitioner argues that he was convicted pursuant to statutes that were unconstitutionally vague. The Mississippi Supreme Court considered this claim and found it to be procedurally barred under Mississippi's contemporaneous objection rule. *See* Miss. Code Ann. 99-39-21(1). The undersigned likewise finds that this claim is procedurally barred by Mississippi's contemporaneous objection rule.

"When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). State procedural bars are independent and adequate when the state has

strictly or regularly applied them to the vast majority of similar cases. *Id.* The Fifth Circuit has held that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar. *See Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999); *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992). Petitioner bears the burden of showing that the state does not strictly or regularly follow the procedural bar. *Williams v. Puckett*, 283 F.3d 272, 280 (5th Cir. 2002). Hood has made no such showing in this case.

The rule regarding state procedural bars is subject to certain narrow exceptions. Federal courts will not consider claims on habeas review that were denied by a state court due to an "independent and adequate" state procedural rule unless a petitioner demonstrates cause and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Absent proof of cause and actual prejudice, federal habeas review is only available if a petitioner proves his innocence of the crime of conviction and thereby shows that a "fundamental miscarriage of justice" occurred. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In his response and other pleadings, Hood does not dispute that counsel failed to object to the statutes as vague. Nor does he dispute that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar that applies to this claim. He fails to show that the Mississippi Supreme Court does not strictly or regularly apply the procedural bar. Petitioner has not demonstrated cause or actual prejudice for the procedural default. Moreover, Hood makes no argument that an exception applies due to a "fundamental miscarriage of justice". Accordingly, the undersigned finds that the claim is procedurally barred.

### (4) Improper Prosecutorial Remarks

Petitioner argues that the prosecution made improper remarks to the jury. Specifically,

Petitioner argues that the prosecution made detailed references to scenes of young, nude boys depicted in the videotapes. He further argues that the prosecutor inflamed the jury by saying "[i]f it looks like a duck, quacks like a duck, it's a duck." Hood argues that this manner of speaking in effect said to the jury that Hood fit the description of a pedophile or sexual predator. Petitioner also argues that the prosecution inflamed the jury by telling them to "tear him up" when they get back to the jury room. Finally, Petitioner asserts that it was prejudicial for the prosecution to refer to Hood's possession of tapes of the Little League World Series and accompanying statements that "that's his preferred age, and that's his preferred gender".

As with the previous claim, the Mississippi Supreme Court considered this claim and found it to be procedurally barred by operation of Mississippi's contemporaneous objection rule. The undersigned likewise finds that this claim is procedurally barred by Mississippi's contemporaneous objection rule. In his response and other pleadings, Hood does not dispute that counsel failed to object to the prosecutor's comments. Nor does he dispute that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar that applies to this claim. He fails to show that the Mississippi Supreme Court does not strictly or regularly apply the procedural bar. Petitioner has not demonstrated cause or actual prejudice for the procedural default. Moreover, Hood does not argue that an exception applies based on a "fundamental miscarriage of justice". Accordingly, the undersigned finds that the claim is procedurally barred.

### (5) Improper Introduction of Videotapes into Evidence

Petitioner argues that the trial court erred by allowing a videotape into evidence that had not been authenticated and that allegedly had been tampered with by Melissa Hood and/or her

sister and nephew. Respondent argues that this claim is procedurally barred because Petitioner did not raise it before the Mississippi Supreme Court. As such, the claim is unexhausted. In his [14] rebuttal, Petitioner argues that he did raise this argument before the Mississippi Supreme Court but that the state court failed to acknowledge or address the claim. A review of Petitioner's brief on direct appeal reveals that Petitioner did not raise this claim. Furthermore, a review of his nearly 100-page Motion for Post Conviction Relief filed on June 17, 2010, does not reveal any specific claim that the videotape in question was not properly authenticated. In the Motion for Post Conviction Relief, Petitioner did discuss the videotape in the context of Melissa Hood's testimony and Detective Larry Davis' testimony. Nevertheless, he did not assert that the videotape was not properly authenticated.

Claims that have not been presented to the state's highest court for review are procedurally barred from federal review and should be dismissed with prejudice. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The court may still reach the merits of a petitioner's claim despite the procedural bar if the petitioner can show cause for the non-exhaustion and prejudice, or if he can show that the court's failure to consider the merits of petitioner's claim will result in a fundamental miscarriage of justice. *Morris v. Dretke*, 413 F.3d 484, 491-92 (5th Cir. 2005). Petitioner offers no adequate explanation for his failure to exhaust this claim in state court. Therefore, the undersigned finds that he cannot demonstrate cause for his failure to exhaust.

Moreover, Petitioner cannot demonstrate a fundamental miscarriage of justice because he has not demonstrated that he is actually innocent of the underlying conviction. *See Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008). The "fundamental miscarriage of justice"

14

exception is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). Petitioner must support his allegations of actual innocence with new, reliable evidence that was not presented a trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

Hood does not identify any new, reliable evidence that was not presented at trial that would demonstrate actual innocence. Moreover, the evidence adduced at trial demonstrated that Hood had constructive possession of the incriminating videotapes–they were found in his home and storage unit. When confronted with the videotape, Hood did not deny knowledge of the videotape but instead stated "I've got it because I started the stuff" and that "if he had to, he would go back to California where it was legal so he could do it again." The evidence at trial tended to show that Petitioner in fact was not actually innocent of the conduct for which he was found guilty.

Even assuming *arguendo* that Petitioner did raise the claim before the Mississippi Supreme Court, the claim is without merit. To satisfy the requirement of authenticating an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it to be. *See* Miss. Rule of Evid. 901(a); *Peyton v. State of Mississippi*, 796 So. 2d 243, 244-45 (Miss. Ct. App. 2001). In this case, Melissa Hood testified that she found the incriminating videotape at her house. *See* Doc. [13-2] at 90. Melissa's sister initially ripped the tape, which her nephew later retrieved from the garbage and taped back together to give to the police. *Id.* at 96. Melissa Hood and her sister confronted Petitioner about the videotape. When confronted, Petitioner replied "I've got it because I started the stuff." *Id.* at

97.  At trial, Melissa Hood identified the videotape introduced into evidence as one she found at her house and which she had turned over to police.  *Id.* at 98.  On cross-examination, defense counsel questioned Melissa on the subject of how she knew that the videotape introduced into evidence was the same tape she turned over to the police.  *Id.* at 102-04.  Defense counsel then moved to exclude the videotape from evidence based on lack of foundation, but conceded that once Detective Davis testified his motion would probably be "null and void".  *Id.* at 105.  Detective Davis identified the incriminating videotape as the one he received from Petitioner's wife.  *Id.* at 111-12.  Detective Davis confirmed the identify of the tape because he wrote a label on the videotape indicating who he received it from and the date and time of receipt.  *Id.*  Following Detective Davis' testimony, defense counsel indicated no objection to the introduction of the videotape into evidence.  *Id.* at 112.  Based on the foregoing, the prosecution laid the proper foundation for authenticating and introducing into evidence the videotape in question.  Moreover, defense counsel successfully elicited testimony regarding the issue of "tampering" for the jury's consideration.  The undersigned finds Hood's claim that the videotape was improperly admitted into evidence to be without merit.

### **(6) Right to Inspect Evidence against Petitioner**

Petitioner argues that he was denied a fair trial because he was not allowed to view and inspect the evidence against him.  Specifically, Petitioner asserts that while the incriminating videotapes were being shown to the jury, Hood sat behind the television and was not allowed to see the tape.  Petitioner concedes that his attorney viewed the tapes, but he apparently contends that defense counsel did not give him a copy of the videotape to view or inspect.  Accordingly, he does not argue that the trial court or prosecution prevented him from viewing the incriminating

videotape, only that defense counsel viewed the tape but did not provide Petitioner an opportunity to view it.

To the extent that Petitioner argues as a substantive matter that he was not permitted to inspect the incriminating videotape, the undersigned finds the claim to be without merit. Petitioner concedes in his pleadings that defense counsel had a copy of the videotape and that defense counsel was able to view the videotape in preparation for trial. Petitioner's citation to cases where the prosecution failed to produce evidence for an accused's inspection is therefore misplaced. To the extent that Petitioner argues that defense counsel was ineffective for not allowing Petitioner to view the videotape during trial, the undersigned will address that issue in the next section when it explores Petitioner's various claims of ineffective assistance of counsel

### (7) Ineffective Assistance of Counsel

In both his original petition, and in pleadings that attempt to amend his petition, Petitioner raises a host of claims alleging ineffective assistance of counsel. In order to establish ineffective assistance of counsel, the petitioner must prove first that his attorney's performance was deficient, and second, that he was prejudiced by this deficient performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffective assistance claim. *Id.* at 700. Judicial scrutiny of counsel's performance is highly deferential and must avoid second guessing. *Id.* 689. Such scrutiny must avoid the distorting effects of hindsight. *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000). To establish prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Counsel's deficient performance must be "so serious as to deprive

him of a fair trial, a trial whose result is reliable." *Id.* at 687.

The only claims that were raised in the original petition are the following: (1) counsel failed to object to the prosecution's improper remarks; (2) counsel failed to object to the introduction into evidence of the videotape that was tampered with; (3) counsel failed to request that Hood be allowed to view the videotape being shown to the jury; (4) counsel failed to adequately pursue a competency hearing; and (5) counsel urged Petitioner to go to trial rather than accept a plea agreement. Of these claims, the Mississippi Supreme Court considered all but the second ground when it reviewed Hood's motion for post-conviction relief. Of the remaining claims for ineffective assistance of counsel, the Mississippi Supreme Court concluded that the claims failed to meet the standards required by *Strickland*. Doc. [13-4] at 27.

### (A) Improper Remarks

Hood identifies several comments made during closing argument that he asserts were improper. He argues that counsel was ineffective for failing to object to the improper remarks. To establish prosecutorial misconduct based on remarks made during trial, the relevant inquiry is whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Geiger v. Cain*, 504 F.3d 303, 308 (5th Cir. 2008). The petitioner is required to show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Id.* It is not sufficient for habeas relief that the prosecutor's comments are simply "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The statements must render the trial fundamentally unfair. A trial is fundamentally unfair if there is a reasonable probability that the verdict might

have been different had the trial been properly conducted. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Hood argues that it was improper for the prosecutor to make the following comment: "If it looks like a duck and walks like a duck, it's a duck. And he's guilty of what he's charged with." In his [15] motion to amend, Hood further elaborates that the prosecutor compared Hood to a duck in order to convince the jury that Hood was a pedophile. Hood further asserts that using terms such as "rat dog or animal" to describe a criminal defendant is improper. *Citing People v. Hernandez* 829 P.2d 394, 396 (1991)(referring to defendant as "rat" impermissible).

The undersigned finds that Petitioner's claim is without merit. There is nothing inherent in the nature of a duck that would equate "duck" with "pedophile" in the minds of a jury. At no time did the prosecutor argue that Hood should be convicted simply by virtue of being a pedophile. In fact, the issue of Hood's sexual proclivities was never presented to the jury, other than whatever inferences the jury might have drawn from his possession of videotapes depicting young, naked boys. Nor did the prosecutor resort to name calling when he used the term "duck". Rather, the prosecutor used an otherwise innocuous and commonly understood figure of speech (the "duck test") to imply that, based on the evidence presented to the jury, it is obvious that Petitioner was guilty of the crime of possessing illegal videotapes. *See United States v. Morgan*, 2011 WL 5826559, at *5 (M.D. Fla. 2011)(finding frivolous defendant's contention that use of colloquial animal phrase warranted a new trial). Even federal courts have used this adage in published opinions on occasion. *See Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998). Given the context of the prosecutor's entire closing argument, Petitioner's leap of logic from "duck" to "pedophile" is

simply too great. The undersigned finds that Petitioner has not demonstrated either deficient performance in counsel's failure to object to this statement nor that the prosecutor's use of the "duck test" resulted in a trial whose result is not reliable.

Petitioner next argues that counsel should have objected when the prosecutor stated the following: "My question is will you do what's right? Will you follow the law? Will you follow the law? Will you tear him up when you go back there? He needs to be found guilty of what he's done?" Although tinged with hyperbole, the prosecutor was merely stating that the state had proven the elements of the crime and should return a verdict of guilty. *See United States v. Thompson*, 482 F.3d 781, 785-86 (5th Cir. 2007)(holding that prejudicial effect of oratory and hyperbole was minimal because prosecutor linked assertions to evidence at trial); *United States v. Vaccaro*, 115 F.3d 1211, 1216 (5th Cir. 1997)("we assume that a jury has the common sense to discount the hyperbole of an advocate"). Hood has failed to demonstrate that counsel was ineffective for failing to object to this particular comment.

Petitioner next argues that counsel should have objected when the prosecutor argued that Petitioner possessed videotapes of the Little League World Series because that was his preferred age and gender. During the trial, evidence demonstrated that police found at Petitioner's storage unit numerous videotapes of the Little League World Series. In relation to this evidence, the prosecutor argued during closing argument "[do] you think it was just a coincidence that the other tapes in storage were tapes of the Little League World Series?" Doc. [13-3] at 23. The prosecutor later brought this again to the attention of the jury. *Id.* at 35. However, the statement about 10 to 12 year olds being Petitioner's preferred age and gender actually occurred at a different point in closing argument; not in connection with the prosecutor's discussion of

videotapes of the Little League World Series. *See id.* at 36-37. In commenting on the incriminating videotape, the prosecutor argued that "[Hood] can't find photograph after photograph of naked, 10- to 12-year-olds exposing their genitals in the public library. He can't find those pictures that are exciting that he likes to look at in the public library. He has to get a montage of them on video that goes on and on and on and shows different children in that situation. That's why he had it, because he likes it. Because that's his preferred age. That's his preferred gender." *Id.* The prosecutor's comments about preferred age and gender were made in reference to library books introduced into evidence by Hood and that depicted nude children. Although the prosecutor noted that Hood had videotapes of the Little League World Series, this was an accurate statement of the evidence of record. Thus, the prosecutor's assertions in closing argument were linked to the evidence at trial. Counsel was not ineffective for failing to object to the prosecutor's comments.

### (B) Introduction of Videotape

Petitioner next argues that counsel was ineffective because he failed to object to the introduction of the incriminating videotape that had been tampered with by Melissa Hood and/or her sister and nephew. As discussed earlier, Melissa Hood gave the videotape in question to Detective Davis. According to testimony at trial, after initially discovering the videotape, Melissa's sister ripped it and threw it in the trash. Doc. [13-2] at 96-97. Only later, Melissa's nephew retrieved the videotape and "fixed" it, before Melissa turned it over to Detective Davis. *Id.*

Defense counsel thoroughly examined Melissa Hood regarding the videotape and the efforts to tear and later fix the videotape. *Id.* at 102-04, 108-09. Although defense counsel

attempted to cast doubt on the reliability of the videotape as evidence, the mere fact that the tape was damaged does not, in and of itself, render the evidence inadmissible. Petitioner does not argue that the contents of the videotape were somehow altered, only that the videotape was ripped and then put back together. Defense counsel successfully put these facts before the jury for its consideration. Counsel initially objected to the introduction of the videotape for lack of foundation or authentication. *Id.* at 105. Counsel later withdrew this objection based on the testimony of Detective Davis establishing a chain of custody. *Id.* at 111-12. Petitioner does not identify any valid basis for defense counsel to have maintained an objection to the admissibility of the videotape. Accordingly, the undersigned finds that counsel was not ineffective for failing to object to the introduction of the videotape.

In the alternative, the undersigned finds that this claim should be denied because Hood failed to present it to the Mississippi Supreme Court. Although Hood discussed the videotape at some length in his motion for post-conviction relief, he did not argue that counsel was ineffective for failing to object to its introduction into evidence. *See* doc. [13-4] at 33-65. In his [14] rebuttal, Hood states that he raised the issue at page two of his motion for post-conviction relief. A review of that document reveals that Hood merely stated that "I may want to challenge these tape but I was siting down at the table look like I am guilty to the jury. All I saw was the back of the TV." Doc. [13-4] at 43. Because Hood failed to present this claim to the state's highest court, it is procedurally barred from federal habeas review. *See Finley*, 243 F.3d at 220.

### (C) Viewing the Videotape

Petitioner argues that counsel was ineffective because he did not move the Court to allow Hood a viewing angle of the incriminating videotape during trial. As discussed earlier, defense

counsel received a copy of the videotape and viewed it prior to trial in preparation of Petitioner's defense. Petitioner merely asserts that he should have been able to watch the video while it was being shown to the jury. The undersigned finds that Petitioner's claim is without merit.

Given that Petitioner was charged with illegal possession of a videotape depicting young, nude males cavorting in various poses and activities, it was reasonable trial strategy for defense counsel not to put Petitioner in a position where he would view the videotape in front of the jury. Defense counsel's strategy was to place as much distance as possible between Hood and the videotape. Counsel argued that there was no evidence demonstrating that Hood ever possessed the incriminating videotape. This strategy would be better served by placing Hood in a position where he did not have a viewing angle of the videotape while in the presence of the jury, and not to draw attention to any connection between Hood and the videotape. Although the undersigned concludes that it is likely the trial judge would have granted defense counsel's motion to allow Petitioner to have a viewing angle of the videotape, the undersigned does not find that such a change in the trial would have had any discernible impact on the result of the trial. To the contrary, the undersigned deems counsel's failure to make such a motion as part of a reasonable trial strategy.

### (D) Competency Hearing

Petitioner argues that trial counsel was ineffective because he failed to adequately pursue a competency hearing. In support, he points to a long history of abuse and mental illness. He also mentions attempts at suicide while in pre-trial custody.

The undersigned finds that this claim is without merit. Prior to trial, defense counsel filed a motion for mental examination. Doc. [13-1] at 24-25. The trial court granted the motion. *Id.*

23

at 26.  Petitioner then submitted to a mental evaluation by W. Criss Lott, a clinical psychologist,

for the purpose of determining Petitioner's fitness to stand trial.  *Id.* at 29-36.  Dr. Lott concluded

"to a reasonable degree of psychological certainty, that Mr. Hood has the sufficient present

ability to confer with his attorney with a reasonable degree of rational understanding, and he has

a factual and rational understanding of the nature and object of the charges against him."  *Id.* at

36.  In light of Dr. Lott's findings, counsel was not ineffective for failing to pursue the

competency question any further.

### (E) Plea Offer

Petitioner argues that counsel was ineffective for failing to advise him to take the state's

six-year plea offer instead of going to trial.  Petitioner makes clear in his pleadings that defense

counsel informed him of the plea offer.  *See e.g.* doc. [13-4] 43.  Petitioner also indicates that

defense counsel informed him that if he went to trial he was facing a sentence as an habitual

offender of up to 20 years if found guilty.  *Id.* at 45.  However, according to Petitioner, defense

counsel advised him that he did not think the videotapes were illegal under Mississippi law.  *Id.*

Petitioner argues that counsel's advice influenced him to go to trial rather than accept the plea

offer.

An attorney's failure to inform his client about sentencing exposure may constitute

ineffective assistance of counsel if the client chooses to go to trial rather than accept a negotiated

plea deal.  *See Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995); *Beckham v. Wainwright*, 639

F.2d 262, 267 (5th Cir. 1981).  Given Petitioner's admission that defense counsel informed him of

the plea offer and of the potential consequences of proceeding to trial, the Court finds that

Petitioner has failed to demonstrate constitutionally ineffective assistance of counsel.

Defense counsel's trial strategy essentially consisted of two points: (1) there was no proof that Hood possessed the incriminating videotapes; and (2) the children depicted on the videotape were not engaged in "sexually explicit conduct"; therefore, the videotapes were not illegal under the relevant Mississippi statutes. *See e.g.* Doc. [13-1] at 13-14 & Doc. [13-2] 89-91. The undersigned cannot conclude that defense counsel's trial strategy was deficient. Petitioner's claim involves improper second guessing of trial counsel's strategy and suffers from the distorting effects of post-trial hindsight.

Even if defense counsel had urged Petitioner to accept the plea offer rather than go to trial, the record suggests that Petitioner voluntarily chose to take his chances with a jury trial rather than accept a guilty plea. Specifically, at sentencing Petitioner told the trial court that before moving from California to Mississippi, he had contacted an attorney to find out if similar types of videotapes were illegal in Mississippi. Doc. [13-3] at 45. According to Petitioner, the attorney informed him that the types of videotape in question were not illegal. *Id.* at 46. He told the trial court that he chose to take the case to trial "because if I accept the six years then I feel like that what I was told, those tapes wasn't up to standard of the law, I only could do one thing, to put the trust in God and put the trust in my attorney". *Id.* at 46-47. He further explained, "I thought 100 percent at the time that I did not commit a crime." *Id.* at 47. In his motion for post-conviction relief, Petitioner re-asserted his belief that the images depicted in the videotapes were not illegal based on his past experiences in California, where law enforcement confiscated but later returned what he describes as similar type materials. *See* Doc. [13-4] at 59-60. This is consistent with the testimony of Melissa Hood. Melissa Hood testified that when she confronted Petitioner about the incriminating videotape, he said that "if he had to, he would go back to

25

California where it was legal so he could do it again." Doc. [13-2] at 100. Thus, the record suggests that prior to trial Petitioner was convinced that the videotapes were not illegal and that he was willing to take his chances with a jury. Based on the evidence in the state court record, it is reasonable to conclude that Petitioner voluntarily agreed to go to trial rather than accept the guilty plea.

Petitioner argues that he agreed to proceed to trial based on misinformation or lack of information from his attorney. He asserts that his attorney did not inform him of the "true consequences" or "risk factors" of proceeding to trial. Hood fails to identify with any specificity how his attorney misinformed him such that he would have accepted the plea offer rather than proceed to trial. At best, he seems to argue that counsel should have had the prophetic insight that the jury would have found Hood guilty. This attempt to resurrect the guilty plea after being found guilty and sentenced to 20 years as an habitual offender appears to be a convenient case of 20/20 hindsight, rather than a meritorious claim of ineffective assistance of counsel.

### (F) Other Claims of Ineffective Assistance of Counsel

In his first motion to amend, Petitioner essentially re-argued the ineffective assistance of counsel claims from his original petition. The undersigned has taken these arguments into account when evaluating the claims of ineffective assistance of counsel discussed earlier. However, in his [23] "Writ of Habeas Corpus Relief Brief" filed on December 4, 2012, Petitioner enumerates 41 paragraphs that assert various claims of ineffective assistance of counsel. *See* doc. [23] at 4-14. These claims are at times repetitious but most of them were not included in the original habeas petition. At no time in this "brief" does Hood request permission to amend his complaint or explain how these claims relate back to the original petition.

Even if the undersigned were to construe this later filed "brief" as a properly filed motion to amend the habeas petition, the undersigned finds that his attempt to amend should be denied as dilatory. Plaintiff did not file the "brief" until approximately 22 months after the original petition and more than 15 months after the state filed its first responsive pleading, despite the fact that virtually every claim of ineffective assistance of counsel asserted in the "brief" was also asserted in various state court pleadings that pre-dated the filing of his § 2254 petition. *See* doc. [13-4] 4-26, 33-137, 165-95. In fact many of the claims in the "brief" are repeated word-for-word from prior state court pleadings. Thus, Petitioner was fully aware of the claims prior to filing his initial habeas petition. Not only did he fail to include them in his original habeas petition, he also failed to include them in his motion to amend the habeas petition. Instead he waited more than a year after the State filed its response to belatedly assert the claims. Hence, the undersigned finds that his attempt to amend is untimely.

Even if considered timely, most of the claims do not relate back to the ineffective assistance of counsel claims in his original petition. As the Fifth Circuit has held, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision." *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). Regardless, Petitioner does little more than offer a list of the 41 numbered claims of alleged deficient performance without explaining how these claims may have had an impact on the outcome of trial. Petitioner's cursory and undeveloped listing of alleged inadequacies of defense counsel is insufficient to establish the prejudice prong for ineffective assistance of counsel. To the extent that Hood's [23] pleading should be construed as a motion to amend, the undersigned finds that the motion should be denied.

27

## Other Motions

### (1) Motion to Suppress Evidence

Petitioner has filed a [24] motion to suppress evidence. In his motion, Hood reitierates many of the arguments already presented in his habeas petition. Relevant to the videotapes, he argues that the incriminating videotapes were illegally obtained and had been tampered with by Melissa Hood, her sister, and/or her nephew. He further argues that he was denied the right to view the videotapes and that experts should have examined the videotapes.

To the extent that Petitioner merely reiterates claims asserted in his habeas petition, the motion is denied for the reasons stated in the above discussion. To the extent that Petitioner seeks a post-trial, post-appeal ruling on the admissibility or suppression of evidence, the undersigned finds his motion to be procedurally improper. The admissibility of evidence and whether to suppress certain evidence are functions of the state trial court and not for a federal court to perform *de novo* on habeas review. Defense counsel filed a motion to dismiss and motion to suppress in state court addressing issues related to the admissibility of the videotapes. *See* doc. [13-1] at 13-14, 18. The trial court denied the motions.

As discussed earlier, defense counsel viewed the tapes in preparation for Petitioner's trial. Moreover, defense counsel closely questioned Melissa Hood and Detective Davis about the origin and custody of the videotape. Defense counsel successfully elicited testimony from Melissa Hood about the alleged "tampering" with the tape. The issue of the videotape's admissibility has been thoroughly examined in state court. The undersigned finds that Petitioner's motion for an order from this Court suppressing evidence should be denied.

## (2) Motion for Mental Examination and Competency Hearing

Petitioner also filed a [25] motion for mental examination and competency hearing with this Court.  Primarily, Petitioner presents his motion in terms of trial counsel's failure to properly investigate Hood's mental illness and alleged incompetence to stand trial.  To the extent that Petitioner's motion merely re-asserts an ineffective assistance of counsel claim, the issue has already been addressed by the undersigned.  Moreover, whether Petitioner was competent to stand trial was an issue for the state trial court to determine and not for this Court to assess *de novo*.  In fact, the state trial court ordered a mental examination.  The psychologist essentially determined that Petitioner was competent to stand trial.  Although Petitioner argues the Dr. Criss previously examined him with respect to a social security disability application, Hood fails to demonstrate how these two unrelated events would render Dr. Criss' opinion invalid.   Petitioner has not presented any evidence or argument to suggest that the earlier examination or conclusions were incorrect or that the proceedings against him were constitutionally improper.  Thus, the undersigned finds that the motion should be denied.

## (3) Motion for Evidentiary Hearing

Petitioner recently filed a [29] Motion for Evidentiary Hearing, in which he argues that there were no evidentiary hearings conducted in the state court proceedings regarding his claims for post-conviction relief.  Specifically, Petitioner argues that he should be granted an evidentiary hearing on the issues relating to the plea offer and his attorney's conduct with regard to this plea offer.  Petitioner asserts that but for his attorney's failure to advise him of the true consequences of proceeding to trial, he would have accepted the state's plea offer rather than proceed to trial. Petitioner has asserted his desire for an evidentiary hearing in other pleadings as well.

On habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Section 2254 allows an evidentiary hearing in federal court only under narrow circumstances. *See McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011)(citing § 2254(e)(2)). The focus of § 2254(e)(2) is to limit the discretion of federal district courts in holding hearings. *Id.* Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1401 (2011). Moreover, the Fifth Circuit has held that a paper hearing is sufficient to afford petitioner a full and fair hearing on the factual issues underlying his claims. *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

The issues raised in Hood's motion have been thoroughly addressed in the above discussion. The record indicates that trial counsel informed Petitioner of the plea offer and of the potential consequences of not accepting the plea offer. Moreover, Petitioner's statements at sentencing and in his state court pleadings indicate that he was convinced that possession of the videotapes was not criminal conduct. The undersigned finds that no further evidentiary hearing is needed on the issues raised in Petitioner's motion; therefore, the undersigned recommends that the motion be denied.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Ronald Hood's [15, 23] motions to amend be denied; that his [24] motion to suppress be denied; that his [25] motion for mental examination and competency hearing be denied; that his [29] motion for evidentiary hearing be denied; and that his 28 U.S.C. § 2254 petition for writ of habeas corpus be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 30th day of January, 2013.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE