**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**RONALD HOOD**                                                                          **PETITIONER**

**V.**                                                              **CASE NO. 1:13-CV-475-DCB-MTP**

**RON KING**                                                                          **RESPONDENT**

---

## REPORT AND RECOMMENDATIONS

This matter is before the Court on the Supplemental Petition [44] of Ronald Hood for

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Having considered the petition, case

record, and applicable law, the undersigned recommends that the petition be denied as set forth

below.

I.       FACTS AND PROCEDURAL HISTORY

        A.       STATE COURT PROCEEDINGS

        On July 10, 2006, Petitioner Ronald Hood was indicted in the Circuit Court of Yazoo

County, Mississippi, for exploitation of children, in violation of Miss. Code Ann. §§ 97-5-31 and

97-5-33(5).[1]  Doc. [13-1] at 7.  The indictment was later amended to charge Hood as a habitual

offender.  *Id*. at 38, 42.  Prior to trial, Hood, through his attorney, moved for a mental

examination to determine whether he was competent to stand trial.  *Id*. at 24-25.  The Circuit

Court of Yazoo County granted Hood's motion, and Dr. Christopher Lott conducted the

examination.  *Id*. at 26, 29-36.  Hood's attorney did not seek a subsequent mental competency

hearing, and the case proceeded to trial.  Hood's wife testified against him at trial, and two

---

[1]The indictment states that on or about March 13, 2006, Hood "did unlawfully, willfully,
knowingly, and feloniously possess a video of naked white male children under the age of
eighteen (18), engaging in sexually explicit conduct, in violation of Section 97-5-31 and Section
97-5-33(5) of the Mississippi Code of 1972, as amended[.]" Doc. [13-1] at 7.

videos of nude children that Hood allegedly possessed were shown to the jury.  On December 11, 2007, Hood was found guilty of exploitation of children and sentenced as a habitual offender to serve a term of twenty years imprisonment without the possibility of parole in the custody of the Mississippi Department of Corrections ("MDOC").  *Id*. at 61; *Hood v. State*, 17 So. 3d 548, 551 (Miss. 2009), *reh'g denied* Sept. 24, 2009.

On January 10, 2008, Hood filed a direct appeal to the Mississippi Supreme Court, raising the following issues: (1) whether the marital privilege caused his wife to be incompetent to testify; (2) whether the children in the video were engaged in sexually explicit conduct; (3) whether Miss. Code Ann. §§ 97-5-31 and 97-5-33(5) are unconstitutionally vague; and (4) whether the prosecution made improper arguments which tended to inflame the jury against him.  Docs. [13-1] at 64; [13-5] at 2-19; *Hood*, 17 So. 3d at 551.  The issue of Hood's competency was not raised on direct appeal.  On July 30, 2009, the Mississippi Supreme Court affirmed the trial court's judgment and sentence.  Hood then filed a *pro se* motion for rehearing, but the supreme court denied his motion.  Doc. [13-5] at 112-113.  He was not represented by counsel after direct appeal.

On June 17, 2010, Hood filed an application for leave to proceed in the trial court and a motion for post-conviction relief.  Doc. [13-4] at 33-36.  In his motion, Hood argued *inter alia* that he received ineffective assistance of counsel based on his trial attorney's failure to move for a competency hearing; explain the benefits and/ or consequences of going to trial versus accepting a plea deal; obtain a statement from Hood's wife saying that she did not want to testify; find another doctor to conduct the mental competency evaluation; call certain witnesses; make certain objections, arguments, and/ or motions; call mental health facilities where Hood

was housed to get mental heath records;[2] strike certain jurors; and advise Hood about rights to a speedy trial. *Id.* at 39-136; 225-322.  On July 22, 2010, the Mississippi Supreme Court denied his application and request for post-conviction relief.  Docs. [1-2] at 29; [13-4] at 27, 217.  The supreme court found that Hood's ineffective assistance of counsel claim did not meet the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and that he failed to make a substantial showing of the denial of a state or federal right as required under Mississippi law. Doc. [13-4] at 27, 217.

On August 9, 2010, Hood moved for reconsideration of his application for leave to proceed in the trial court.  Doc. [13-4] at 4-22, 326-344.  The supreme court denied reconsideration on August 25, 2010. Docs. [1-2] at 28; [13-4] at 324.  Hood filed a second application on September 14, 2010,[3] which was dismissed as procedurally barred on October 26, 2010. Docs. [1-2] at 27; [13-4] at 161-162, 165-195.

---

[2]*See* Doc. [13-4] at 46, 232 ("Failure to make phone calls to Mental Health about my mental problems I have and call the hospital which I was institutionalized [*sic*] to get mental records on me.  I told him that I was going for a while before I was arrest [*sic*] at the Yazoo County Mental Health.  All he did is [*sic*] got upset and tell me who is going to pay for these mental records.")

[3]In the second petition, Hood reasserted arguments from his original petition and added a new basis for ineffective assistance of counsel: failure to investigate.  Doc. [13-4] at 175.  Hood asserted that his trial counsel:

....failed to investigate any state's witnesses, and to provide a meaningful defense to any mental evaluation ordered by the trial court....trial counsel failed to present evidence that I made suicidal [*sic*] attempts in jail just prior to trial, and because trial counsel failure to investigate the entire matter, had the mental health examiners that treated petitioner to come to court to testify about petitioner mental problems, and failure of trial counsel calling petitioner sister and niece [*sic*] to testify about his childhood and mental problems–denied petitioner effective assistance of counsel....

*Id*. at 175-176.

B.     FEDERAL HABEAS PETITION

On February 10, 2011, he filed a Petition for Writ of Habeas Corpus pursuant to 28

U.S.C. § 2254 in this Court, challenging the constitutionality of his conviction and sentence.

Doc. [1].  He asserted the following grounds for relief: (1) whether the marital privilege rendered

his wife incompetent to testify; (2) whether the children in the videos shown at trial were

engaged in "sexually explicit conduct"; (3) whether the statutes under which he was convicted

were constitutionally vague; (4) whether the prosecutor made improper statements during

opening and closing arguments; (5) whether the trial court erred by allowing the videos into

evidence; (6) whether the Petitioner was denied a fair trial because he was not allowed to view

and inspect the evidence against him; and (7) whether the Petitioner was denied effective

assistance of counsel based on trial counsel's failure to: (a) object to improper prosecutorial

remarks; (b) object to the introduction of tampered evidence; (c) move for Petitioner to examine

the evidence against him (i.e., watch videotapes that were shown to the jury); and (d) adequately

pursue a competency hearing.  *Id*. at 5-20.  Hood alternatively asked this Court to reverse and

remand his case so that he could accept the six-year plea deal originally offered to him by the

prosecutor.  *Id.* at 25.

On May 23, 2012, Hood filed a motion to amend his petition to add the following

grounds for habeas relief: (1) whether counsel was ineffective for persuading the Petitioner to go

to trial rather than accept a plea offer; (2) whether the Petitioner was denied a fair trial because

he was not allowed to inspect the evidence against him; (3) whether the indictment should not

have been read to the jury because it contained information about prior convictions; (4) whether

the indictment was defective because it read "video," instead of "videos"; (5) whether the

prosecutor made improper remarks and referred to the Petitioner by derogatory names; (6)

whether jury instruction S-7 was improper and violated the Petitioner's due process rights; (7) whether witnesses tampered with videotape shown at trial; (8) whether the Petitioner was denied access to discovery documents; (9) whether the failure to conduct a mental competency hearing violated the Petitioner's due process rights; (10) whether counsel was ineffective for failing to investigate the Petitioner's mental illness history and failing to request a mental competency hearing; and (11) whether the Petitioner is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel.  Doc. [15].

On December 4, 2012, Hood filed a memorandum brief, which was interpreted by the Court as a request to further amend the petition.  Doc. [23].  In the brief, Hood argued that his attorney provided ineffective assistance of counsel; that the marital privilege rendered his wife incompetent to testify; that his indictment was defective; that he was not competent to stand trial or make a rational decision about whether to go to trial or accept a plea offer; and that there was insufficient evidence to show that he possessed the videotapes used against him at trial.  *Id*.

By Report and Recommendations [31] dated January 30, 2013, Magistrate Judge Walker recommended that the motion to amend and memorandum brief, which was interpreted as a request to further amend, be denied and that the Petition [1] be denied on its merits.  In recommending denial, Judge Walker found that the new claims asserted in the motion to amend and memorandum brief did not relate back to the date of the original petition and, therefore, were procedurally barred.  Hood filed various objections [36] to the Report and Recommendations.

On March 26, 2013, the Court adopted the Magistrate Judge's recommendation as to the motion to amend and memorandum brief and denied both motions.[4]  With respect to the habeas

---

[4]*See* Order [38] at 2 (adopting the recommendation that "the addition arguments raised in Petitioner's Motion to Amend and "Habeas Brief" are new and therefore procedurally barred," but stating that "the arguments raised in each of these motions that relate back to the Petitioner's

petition, however, the Court found that further investigation is necessary as to whether Hood should have received a competency hearing and whether his attorney was ineffective for failing to pursue a hearing.  Order [38] at 3.  The Court appointed counsel to represent Hood and review his claim, and it directed counsel to either "file an amended petition related to [Hood's] claims arising out of his failure to receive a competency hearing;" or "move for the Court to hold a hearing on this matter." *Id*. at 6.

On June 10, 2013, Hood, through his appointed counsel, filed a supplemental petition raising the following issues: (1) whether Hood's trial counsel provided constitutionally ineffective assistance of counsel by (a) failing to request a competency hearing and (b) failing to investigate Hood's mental health condition; and (2) whether the trial court violated Hood's constitutional right to due process by failing to conduct a competency hearing.  In the supplemental petition, Hood requested a hearing on the issue of whether his trial counsel was constitutionally ineffective for failing to investigate his mental condition.  *See* Petition [44] at 19. Respondent Ron King argued that Hood's trial counsel was not ineffective for failing to pursue a competency hearing, that Hood's due process argument is procedurally barred, and that Hood's claim for failure to investigate is not properly before this Court.  *See* Doc. [45].  The issues have been fully briefed and are ripe for a decision.

II.   LEGAL ANALYSIS

A.   PROCEDURALLY IMPROPER CLAIMS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") and case law interpreting it provide the standards under which the petition, as supplemented, must be evaluated.[5]  *See Neal*

---

original habeas petition…will be considered by this Court.")

[5]Hood's petition was filed after the effective date of the AEDPA.

*v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Lindh v.*

*Murphy*, 521 U.S. 320, 324-26 (1997) (stating that the AEDPA applies to federal habeas corpus

petitions filed on or after April 24, 1996.  As a preliminary matter, applicants must exhaust all

state remedies before seeking federal habeas relief.  Title 28 U.S.C. § 2254 provides, in relevant

part, that:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State Court shall not be granted unless it appears
> that–
>> (A)  the applicant has exhausted the remedies available in the courts of the
>> State; or
>> (B)(i)  there is an absence of available State corrective process; or
>>    (ii) circumstances exist that render such process ineffective to protect
>> the rights of the applicant.
>   (2) An application for writ of habeas corpus may be denied on the merits,
> notwithstanding the failure of the applicant to exhaust the remedies available in
> the courts of the State.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must

exhaust his remedies in state court.  *Byron v. Epps,* 518 F. App'x 243, 251 (5th Cir. 2013);

*Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 842 (1999).  "The longstanding exhaustion requirement is not

jurisdictional, but reflects the policy of federal-state comity, which is designed to give state

courts the initial opportunity to consider and correct alleged violations of their prisoners' federal

rights." *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005) (citing *Anderson v. Johnson*, 338

F.3d 382, 386 (5th Cir. 2003).

To satisfy the exhaustion requirement under § 2254(b)(1)(A), a federal habeas petitioner

must generally present his claims to the state's highest court in a procedurally proper manner and

provide that court with a fair opportunity to act on the claims.  *Nobles v. Johnson*, 127 F.3d 409,

420 (5th Cir. 1997); *Carter v. Estelle*, 677 F.2d 427, 442-44 (5th Cir. 1982).  A claim is

exhausted "when the substance of the federal habeas claim has been fairly presented to the highest state court." *Smith v. Dretke,* 422 F.3d 269, 276 (5th Cir. 2005). If a claim is fairly presented to the highest state court on direct appeal or in post-conviction proceedings, it will be deemed exhausted "even if the state court fails to address the federal claim," *Soffar v. Dretke*, 368 F.3d 441, 467 (5th Cir. 2004), or if the federal claim is not fairly presented but the state court addresses it *sua sponte*, *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004). The exhaustion requirement is not satisfied if a petitioner presents new legal theories or new factual claims in his federal application. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *see also Nobles*, 127 F.3d at 420.

The Petitioner asserts three grounds for habeas relief in his supplemental petition. The parties agree that the first ground, whether trial counsel was ineffective for failing to request a competency hearing, has been exhausted. At issue, however, is whether the remaining grounds are properly before this Court. The undersigned will first consider the Petitioner's argument that trial counsel provided constitutionally ineffective assistance by failing to investigate Hood's mental health condition.

i.   FAILURE TO INVESTIGATE

In the supplemental petition, Hood argues that his claim for ineffective assistance based on trial counsel's failure to investigate is preserved for federal habeas review because it was alleged in his state court post-conviction relief motion. *See* Doc. [44] at 19. He requests a hearing on this issue. The Respondent argues that the failure to investigate claim is not properly before the Court because: (1) it was not included in the Order [38] allowing additional briefing; and (2) it was not raised in the original habeas petition. The undersigned has reviewed the case record and agrees with the Respondent that the Petitioner's failure to investigate claim is not

properly before the Court and, therefore, should be denied.

The record indicates that Hood asserted a claim for failure to investigate in his state court motion for post-conviction relief. In the motion, Hood stated that his trial attorney failed "to make phone calls to Mental Health about my mental problems I have and call the hospital which I was institutionalized [*sic*] to get mental records on me." Doc. [13-4] at 46, 232. When Hood filed a second motion for post-conviction relief in the Mississippi Supreme Court, he explicitly asserted that his trial counsel failed to investigate his mental health condition. Hood alleged that his attorney failed to "provide a meaningful defense to any mental evaluation ordered by the trial court[,]...present evidence [of Hood's suicidal] attempts in jail...[,] investigate the entire matter, [have] the mental health examiners that treated petitioner to come to court to testify about [his] mental problems, and [call his] sister and niece to testify about his childhood and mental problems." Doc. [13-4] at 175-176. As such, the undersigned finds that the Petitioner fairly presented his claim in state court and, therefore, satisfies the exhaustion requirement with respect to this claim.

Although Hood raised a claim for failure to investigate in the Mississippi Supreme Court, he did not assert failure to investigate as a ground for relief in his original habeas petition. It appears that the Petitioner first presented an argument in this Court for ineffective assistance of counsel based on a failure to investigate in his motion to amend the petition.[6] Hood also attempted to add a claim for failure to investigate in his subsequent memorandum brief.[7] He

---

[6]In the motion, Hood stated that "[p]sychiatric history is an essential element in a competency to stand trial [*sic*]." Doc. [15] at 24. He claims that he "was prejudiced by trial counsel's failure to investigate his history of mental illness, [and] to request a hearing to determine his competency to stand trial." *Id.*

[7]Hood argued in the brief that "trial counsel refused to question the mental health doctors of the Defendant or asked [*sic*] for records on the Defendant['s] disorders." Doc. [23] at 5, ¶7.

further addressed counsel's failure to investigate in his objections to the Report and Recommendations.[8]  As noted above, however, the Court adopted the Magistrate Judge's recommendation to deny the new claims asserted in the motion to amend and memorandum brief.

In his Report and Recommendations [31], Magistrate Judge Walker found that most of the newly asserted claims were untimely and did not relate back to the original petition.  Doc. [31] at 27.  Magistrate Judge Walker stated that "many of the claims in the 'brief' are repeated word-for-word from prior state court pleadings.  Thus, Petitioner was fully aware of the claims prior to filing his initial habeas petition."  *Id.*  The Court agreed with Magistrate Judge Walker's findings as to the requests to amend and stated that the arguments raised in the motion and brief "that relate to the Petitioner's original habeas petition are addressed in the Report and Recommendation and will be considered by the Court."  Order [38] at 2.

Further, in allowing Hood to supplement his petition, the Court limited the issues at this stage of the proceedings to: (1) whether Hood should have received a mental competency hearing; and (2) whether counsel was ineffective for failing to assert that Hood should have received a mental competency hearing.  *Id.* at 6.  The Court only permitted Hood to file a supplemental petition "*related to his claims arising out of his failure to receive a competency*

---

He further stated that "trial counsel fail to investigated [*sic*] into the results of the mental evaluation report and the Defendant mental disorders were mentions [*sic*] at the mental evaluation interview on Oct. 4, 2007." *Id.* at 5, ¶8.  Hood claimed his attorney "failed to investigate for [an] adequate defense on the Defendant['s] mental disorders, [and that] if he had done so[,] he would have seen that [Hood's] mental disorders would fall within criteria of McNaghten Rule for Defense." *Id.* at 14, ¶41.

[8]*See* Doc. [36] at 21-22, ¶1 ("Defense attorney failed to investigate my history of mental illness in which I have brought up the issue of my mental problems to his attention, that I was under psychiatric care and taking medication at the time of my arrest.  He failed to call them on the phone to get a copy of the mental health records and other places that I have been.").

*hearing*." *Id.* (emphasis in original).

Because the Court has limited the issues in the supplemental petition and as it appears the Court has already found that the failure to investigate claim does not relate back to the original petition, the undersigned finds that this claim is not properly before the Court.[9]  Accordingly, the undersigned recommends that the Court deny the Petitioner's claim for ineffective assistance based on counsel's failure to investigate Hood's mental health condition.  If the Court adopts this recommendation, the Petitioner's request for a hearing will be moot and, therefore, should also be denied.  Further, as the Petitioner has had a full and fair opportunity to make complete submissions on this issue, a hearing is not warranted.[10]

---

[9]Although this issue is not properly before the Court, the undersigned would nevertheless recommend that relief on the failure to investigate claim be denied essentially for the reasons given under the analysis of the Petitioner's claim for ineffective assistance of counsel based on the failure to request a competency hearing.  *See infra.*

[10]Section § 2254(e)(2) provides that:

If an applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(A) the claim relies on–
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered
        through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, the Petitioner has not made the requisite showing for a hearing.  Hood's failure to investigate claim does not rely on a new rule of constitutional law or on a factual predicate that could not have been previously discovered through due diligence.  Also, the facts supporting Hood's claim do not establish by clear and convincing evidence that but for counsel's failure to investigate, a reasonable jury would have found him innocent of exploitation of children.  As stated by the Supreme Court, "[i]t would be contrary to...allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and

ii.   Due Process Violation

Next, the Petitioner argues that he properly raised a claim in the Mississippi Supreme

Court for violation of due process based on his failure to receive a competency hearing.  He

asserts that, under a liberal review of the record, he raised the due process claim in his motion for

post-conviction relief.  Hood states that because he listed "due process" under the "Argument

Grounds" section of his post-conviction relief motion and discussed trial counsel's failure to

request a competency hearing on the next page of the motion, his due process claim was properly

presented to the Mississippi Supreme Court.  *See* Doc. [13-4] at 41-42; Supp. Petition [44] at 23.

However, the Petitioner's due process arguments in that motion did not relate to the trial court's

failure to conduct a competency hearing.  The Petitioner made the following due process

arguments in his post-conviction relief motion:

> I am explaining this Defense attorney [*sic*] know the reading of the indictment
> and then he bought [*sic*] up the issue of prior conviction kept from the jury so he
> didn't [*sic*] object to the court in reading the indictment.  I feel like this violate
> [*sic*] my rights and due process and 14th Amendment and this is plain error of the
> court and defense attorney.  Doc. [13-4] at 46-47, ¶17.

> ...Depictions of nudity without more constitute protected expression.  The U.S.
> Const. Amend XIV Due Process Clause protects the accused against conviction
> except upon proof beyond a reasonable doubt of every fact necessary to constitute
> the crime with which he is charged.  *Id* at 74, 93.

> A statute violates due process of law if it either forbids or requires the doing of an
> act in terms so vague that men of common intelligence must necessarily guess at
> its meaning and differ as to its application.  *Id*. at 97.

> Thus[,] a statute that forbids an act in terms so vague that men of common
> intelligence must necessarily guess as to its meaning and differ as to its
> application violates the first essential of due process of law [*sic*].  *Id.* at 98.

---

reviewed by that court in the first instance effectively *de novo*."  *Cullen v. Pinholster*, 131 S.Ct.
1388, 1399 (2011).  Accordingly, the Petitioner's request for a hearing should be denied based
on his failure to make the showing required under § 2254(e)(2).

The Due Process Clause of the Fourteenth Amendment's guarantee against cruel and unusual punishment [*sic*].  I am useing [*sic*] this case because my physical and mental health condition, my age and also my sentence...Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense.  *Id.* at 107.

...the Defense Attorney had never said that I could be facing Habitual Life Sentence untill [*sic*] the day before trial, he could have told me that this could be on the table for the District Attorney could [*sic*] go that way in more less leting [*sic*] me know the fact ahead of time.  This was violated [*sic*] my Constitutional Right and Due Process of Justice's [*sic*].  *Id*. at 109.

...I am asking this Honorable Court to dismiss this tape and acquittal [*sic*] on the grounds my wife Melissa Hood testimony [*sic*] and the misconduct of Prosecutor Powell and the defense attorney mention [*sic*] in this issue and the contents of this tape, this invalidation of my Constitutional Right as Due Process [*sic*] and a Fair Trial, in Article 3 of Sec 14 Due Process of Constitution of Mississippi, and Fifth, Fourteenth Amendments, and Manifest error, The Doctrine Fruit of the Poisonous Tree [*sic*].  *Id*. at 123-124.

I believe Mississippi Supreme Court see [*sic*] that I had a unfair [*sic*] trial in Ineffective Assistance of Counsel [*sic*] and prosecutor's misconduct and denied Due Process, therefore upon this issue a New Trial [*sic*]....  *Id.* at 133.

Even under a liberal review of the motion, at no point in these arguments does it appear that Hood asserted a due process violation based on the trial court's failure to conduct a mental competency hearing.[11]  The due process claims in the motion for post-conviction relief relate to other errors Hood believed he suffered at trial.  As such, the Petitioner's argument that he presented his due process claim in his motion for post-conviction relief is without merit.

Nevertheless, this Court liberally construed Hood's state court pleadings and determined that he did raise a due process claim in his motion for reconsideration of the application for leave

---

[11]*See Hernandez v. Thaler*, 630 F.3d 420, 427 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding pro se are entitled to the benefit of liberal construction.  It is the substance of the relief sought by a pro se pleading, not the label that the petitioner has attached to it, that determines the true nature and operative effect of a habeas filing."); *see also Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("Indeed, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.") (internal citations and quotation marks omitted).

to proceed in the trial court.[12]  In the motion for reconsideration, Hood argued *inter alia* that trial counsel refused to move for a competency hearing, and that his conviction should be reversed. Doc. [13-4] at 13, 17.  Hood also cited *Sanders v. State*, a case wherein the Mississippi Supreme Court reversed a conviction based on a due process violation.  286 So. 2d 825 (Miss. 1973). Taking this case into consideration, the undersigned interprets the Petitioner's argument in his motion for reconsideration as a claim for violation of due process rights based on the failure to receive a competency hearing as well.

While the Petitioner arguably raised a due process claim in his motion to reconsider, the Mississippi Supreme Court did not address the claim because it was not procedurally proper.[13] Hood filed the due process claim in a motion to reconsider rather than in his direct appeal or original motion for post-conviction relief.[14]  Since he failed to present the claim in a procedurally proper manner, he did not give the Mississippi Supreme Court a fair opportunity to act on it.  *See*

---

[12]In the Order [38] adopting in part the Report and Recommendations, the Court stated:

> The Petitioner, who then proceeded pro se in his motion for post-conviction relief, *barely* raised the issue of his attorney's ineffectiveness for failure to file a motion for competency hearing.  The Mississippi Supreme Court denied the Petitioner's ineffective-assistance claim on the merits....  The Petitioner again raised the matter in a motion for reconsideration, this time perhaps on both ineffective-assistance and due-process grounds,...but the entirety of the Petitioner's claims were not considered for procedural reasons.

Order [38] at 5, n.2 (internal citations omitted).

[13]*See* Order [13-4] at 3 (denying the motion for reconsideration and stating that "[p]ursuant to M.R.A.P. 27(h), motions for reconsideration, vacation or modification of rulings of the Supreme Court on motions are generally not allowed.")

[14]If a claim has been fairly presented to the highest state court on direct appeal or in post-conviction proceedings, it will be deemed exhausted "even if the state court fails to address the federal claim," *Soffar*, 368 F.3d at 467, or if the claim is not fairly presented but the state court addresses it *sua sponte*, *Jones*, 375 F.3d at 355.

*Nobles*, 127 F.3d at 420 ("[P]rocedural default...occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."). Thus, the Petitioner's due process claim as it relates to the trial court's failure to conduct a competency hearing has not been exhausted and is barred from this Court's review.

A federal court may consider a procedurally barred habeas claim on the merits if the petitioner shows either: (1) "cause and actual prejudice," or (2) a fundamental "miscarriage of justice." *See Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004) ("[A] court may resurrect a defaulted claim, and consider its merits if 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'"); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To show "cause and actual prejudice," a petitioner must prove that an external impediment prevented him from raising the defaulted claim. *Bagwell*, 372 F.3d at 756 (citing *Coleman*, 501 U.S. at 753). "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. "As for prejudice, the petition must show not merely that the errors...created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (internal citations and quotation marks omitted). To show a fundamental miscarriage of justice, a petitioner must prove "that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).

In the supplemental petition, Hood does not argue that an external impediment prevented him from raising the defaulted due process claim or that he is innocent of his crime of conviction.  Instead, he argues that he properly presented his due process claim in his motion for post-conviction relief.  The undersigned has already determined that the claim was not fairly presented in that motion.  As Hood did not exhaust his due process claim or establish that an exception applies to the procedural default, the undersigned finds that the due process claim, as it relates to the trial court's failure to conduct a mental competency hearing, is procedurally barred and cannot be considered by this Court.  Therefore, the request for habeas relief on this claim should be denied.

B.    CLAIMS PROPERLY BEFORE THE COURT

The parties agree that the Petitioner exhausted his claim for ineffective assistance of counsel based on his attorney's failure to request a competency hearing.[15]  Accordingly, the undersigned will address whether Hood is entitled to habeas relief on this claim.

i.    STANDARD FOR HABEAS REVIEW OF STATE COURT JUDGMENTS

Under the AEDPA, a petitioner who is in custody pursuant to a State court judgment is not entitled to federal habeas relief unless adjudication of the petitioner's claim(s):

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In evaluating a petition for federal habeas relief, this Court must review

---

[15]"Respondent submits that, for the purposes of federal habeas review under the A.E.D.P.A., Hood has properly exhausted a claim that his attorney was ineffective for failing to seek a competency hearing..." Doc. [45] at 8.

pure questions of law and mixed questions of law and fact under § 2254(d)(1) and questions of fact under § 2254(d)(2). *McGowen v. Thaler*, 675 F.3d 482, 489 (5th Cir. 2012) (citing *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001)); *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).

Because ineffective assistance of counsel claims involve mixed questions of law and fact,[16] this Court may only grant habeas relief if the Mississippi Supreme Court's rulings on the Petitioner's ineffective assistance claim were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  "A state court's decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza,* 540 U.S. 12, 15-16, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003)).

A state court unreasonably applies clearly established federal law within the meaning of the AEDPA if it identifies the correct "governing legal principle" from Supreme Court precedent and applies that principle in an "objectively unreasonable" manner.  *Wiggins v. Smith,* 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)); *Williams v. Taylor*, 529 U.S. 362, 409, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

  ii. INEFFECTIVE ASSISTANCE OF COUNSEL

Hood argues that he received constitutionally ineffective assistance of counsel because his trial attorney did not move for a mental competency hearing as required by Mississippi

---

[16]"Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)."  *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

Uniform Circuit and County Court Rule 9.06, and the failure to do so prejudiced his case.  Rule 9.06 states in relevant part as follows:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.

The Petitioner asserts that trial counsel's failure to comply with Rule 9.06 constitutes ineffective assistance and entitles him to habeas relief on this claim.  The Respondent argues that trial counsel was not ineffective because, during the relevant time period, the Mississippi Supreme Court did not consistently require trial courts to conduct a competency hearing if a defendant had been given a mental examination prior to trial.  The Respondent contends that trial counsel acted reasonably and that the Petitioner's request for habeas relief should be denied.

In *Strickland v. Washington* the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim is to be measured: the petitioner must show that his "counsel's performance was deficient" and that the "deficient performance prejudiced the defense."  466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the *Strickland* standard requires a petitioner to show that the attorney's acts "fell below an objective standard of reasonableness").  "To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)).  The petitioner must prove that the outcome of

his trial would have been different "but for counsel's alleged errors," and that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

This Court's "scrutiny of counsel's performance must be highly deferential," and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998) (observing that the Fifth Circuit "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotation marks and citations omitted).  "Deficiency is measured by the reasonableness of attorney performance under prevailing professional norms, and review is accompanied by a strong presumption that counsel's performance was adequate and the product of reasoned trial strategy." *Charles v. Thaler*, 629 F.3d 494, 499 (5th Cir. 2011) (internal quotation marks and citations omitted).

While district courts are to evaluate a habeas petitioner's claim for ineffective assistance of counsel by looking to the *Strickland* standards, the Fifth Circuit cautioned in *Schaetzle v. Cockrell* that:

> It bears repeating that the test for federal habeas purposes is not whether [the petitioner] made [the *Strickland*] showing. Instead, the test is whether the state court's decision-that [the petitioner] did not make the *Strickland*-showing-was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.

343 F.3d 440, 444 (5th Cir. 2003), *cert. denied sub nom. Schaetzle v. Dretke*, 540 U.S. 1154, 124 S. Ct. 1156, 1157 L. Ed. 2d 1050 (2004).

The United States Supreme Court warned in *Harrington v. Richter*, –U.S.–, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011):

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

The undersigned has reviewed the Supplemental Petition and finds that Hood has not shown that his trial counsel provided constitutionally ineffective assistance by failing to request a mental competency hearing. The Mississippi Supreme Court, in ruling on the motion for post-conviction relief, found the Petitioner's ineffective assistance claim "fails to meet the standards required by *Strickland v. Washington*...." Doc. [13-4] at 27, 217. The court did not explain what it considered in reaching this conclusion or how Hood failed to make the requisite showing under *Strickland*.

The Petitioner asserts that his attorney's conduct fell below an objective standard of reasonableness when he, after moving for a mental examination, did not request that the trial court conduct a mental competency hearing. Notwithstanding this argument, the undersigned will look to the results of the mental examination to determine whether they may have influenced counsel's decision not to pursue a competency hearing.

Dr. Lott summarized the results of his mental examination of Mr. Hood in a letter to the trial judge. *See* Doc. [13-1] at 29-36. Dr. Lott reviewed documents related to Hood's criminal case as part of the examination, but he did not review any of Hood's medical history. *Id.* at 30. Hood did, however, inform Dr. Lott of his medical history and psychiatric history. *Id.* at 32-33. Hood advised Dr. Lott that he had been diagnosed with a bipolar disorder in June 2006, and that he had been treated at a mental health center around the same time because he was suicidal after his arrest. *Id.* Hood said that he attempted suicide after his bond was revoked by ingesting pills. *Id.* At the time of the mental examination, he was not suicidal, but threatened to harm himself if

he did not receive help for his wisdom tooth.  *Id.*

Dr. Lott observed during the examination that Hood was attentive, he promptly responded to questions, and he did not have significant expressive and receptive language deficits. *Id.* at 33.  Dr. Lott noted that Hood expressed fear of harm by other inmates if he were sent to the Mississippi State Penitentiary in Parchman, Mississippi. *Id.* at 34.  Dr. Lott found that Hood's memory of childhood and personal information was poor and that his verbal abstracting abilities were in the low average range.  *Id.*  Dr. Lott's assessment revealed that Hood had a Full Scale IQ Score of 89, which falls in the average range.  *Id.*  In addition, when asked, Hood advised Dr. Lott of the charges he was facing at the time, the purpose of a trial, the roles of his lawyer and opposing counsel, the possible verdicts in his case, and the meaning of taking a plea bargain and testifying at trial.  *Id.*

At the end of the evaluation, Dr. Lott made the following forensic opinions:

It is my opinion, to a reasonable degree of psychological certainty, that Mr. Hood has the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding, and he has a factual and rational understanding of the nature and object of the charges against him.  Mr. Hood's intellectual level appeared to be in the low average range, and his reading level falls in the low borderline range, so any complex legal material should explained to him in simple and concrete terms.

*Id.* at 36.  Dr. Lott also found that Hood did not appear to need further testing or psychiatric treatment at that time.  *Id.*

In support of his ineffective assistance argument, the Petitioner focuses on the last statement in the forensic opinions: that complex legal material should be explained to him in simple and concrete terms.  Hood argues that, based on this finding, trial counsel should have moved for a competency hearing.  He does not argue that he was incompetent to stand trial, only that he was entitled to a hearing.

Mississippi law deems a defendant competent to stand trial if the defendant is able to "perceive and understand the nature of the proceedings," "rationally communicate with his attorney about the case," "recall relevant facts," "testify in his own defense if appropriate," and his "ability to satisfy the foregoing criteria is commensurate with the severity of the case." *Hearn v. State*, 3 So. 3d 722, 728 (Miss. 2008) (citing *Martin v. State*, 871 So. 2d 693, 698 (Miss. 2004)). Similar to Mississippi law, federal law requires courts to consider whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him" when determining competency to stand trial. *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960).

Although Rule 9.06 of the Mississippi Uniform Circuit and County Court Rules clearly requires trial courts to conduct a competency hearing after a defendant has undergone a mental examination, the hearing requirement has not always been strictly enforced. In *Hearn v. State*, the Mississippi Supreme Court did not require a subsequent competency hearing where the defendant had been examined by a psychiatrist who later testified at his trial and was subjected to cross-examination.[17] In *Tutor v. State*, the Mississippi Court of Appeals found harmless error where a trial court failed to conduct a competency hearing after a defendant, who first had been found incompetent to stand trial, was later found competent.[18] Conversely, in *Sanders v. State*,

---

[17]3 So. 3d at 730 ("We find that the trial court failed to comply in the strictest technical sense with Rule 9.06 which mandates that a competency hearing be conducted following a court-ordered mental examination.... However, Dr. Montgomery testified at trial as to Hearn's competency and was subjected to cross-examination. Because Hearn was afforded the opportunity to present competing evidence, the purposes of Rule 9.06 were satisfied.").

[18]933 So. 2d 1003, 1005-1006 (Miss. Ct. App. 2006). The defendant in *Tutor* was given a mental examination, which indicated that he was incompetent to stand trial. *Id.* at 1005. The trial court held a competency hearing and found that he was incompetent. *Id.* The defendant

the Mississippi Supreme Court found error where a trial court failed to conduct a competency

hearing after ordering a defendant to undergo a psychiatric examination, but never making an

on-the-record finding that the defendant was competent to stand trial.[19]  Similarly, in *Jay v. State*,

the Mississippi Supreme Court reversed a defendant's conviction where the trial court failed to

conduct a competency hearing after it ordered the defendant to undergo a psychiatric

examination.[20]

 Because the Mississippi Supreme Court allowed alternative avenues to satisfy Rule 9.06

during the relevant time period, Hood's trial counsel, armed with Dr. Lott's mental evaluation

which found that Hood was competent to stand trial, could have reasonably concluded that a

hearing was unnecessary.

 The Fifth Circuit, in determining whether an attorney should have requested a

competency hearing, evaluates:

---

was then committed to a state hospital.  *Id*.  Three months later, doctors who observed the
defendant sent a new report finding that he was competent to stand trial. *Id*.  No competency
hearing was held, but the defendant went to trial and was ultimately found guilty.  The
Mississippi Court of Appeals stated that, "[a]lthough the court should have followed the proper
procedures and held a second competency hearing, we find that the failure to do so in this case
was harmless error."  *Id*. at 1006.

[19]9 So. 3d 1132, 1137 (Miss. 2009).  In reversing the trial court's decision, the
Mississippi Supreme Court reasoned, "the appellate record before us contains no evidence that
Sanders was found to be competent to stand trial.  At a minimum, there was no definitive
testimony or report that determined Sanders competent to stand trial....Without any evidence
concerning Sanders's competency to stand trial,...this Court reverses and remands for a new
trial."  *Id.* at 1139.

[20]25 So. 3d 257, 263 (Miss. 2009).  In reaching its decision, the Mississippi Supreme
Court stated that "[t]here are currently two views on this Court regarding mental competency
hearings, that of the majority in *Hearn*, and that as expressed in *Sanders*....Regardless of which
view one takes generally, there was no competency hearing prior to or during trial.  Dr. Webb
did not testify at trial, and there is, therefore, no argument that the 'purposes' of Rule 9.06 were
satisfied, as required in *Hearn*."  *Id*.

whether counsel for mentally suspect defendants erred in failing to investigate or pursue a defense of insanity or incompetency to stand trial by appraising the facts known and available or with minimum diligence accessible to defense counsel and determining whether those raise reasonable doubt as to the defendant's mental condition.

*Smith v. Maggio*, 696 F.2d 365, 368 (5th Cir. 1983) (quoting *United States v. Edwards*, 488 F.2d 1154, 1164 (5th Cir. 1974)).

In the instant matter, Hood's attorney could have reasonably relied on the mental evaluation results and Dr. Lott's opinions to conclude that a competency hearing was not necessary.  Trial counsel observed and interacted with Hood prior to trial, which prompted him initially to move for a mental examination.[21]  The trial court granted his request, and the examination was conducted.  After reviewing the results, trial counsel did not find it necessary to seek a competency hearing.  Considering that the results showed Hood's ability to understand the nature of the proceedings against him and that he did not need any additional testing or psychiatric treatment, there is a reasonable argument that the Petitioner's attorney satisfied *Strickland*.  Further, the record shows that Hood was not prejudiced by his attorney's failure to request a competency hearing because he was able to assist with his defense.[22]

In *Roberts v. Dretke*, the Fifth Circuit considered a petitioner's claim that his trial

---

[21]*See* Doc. [13-1] at 25 (stating in the motion that "there is reason to question whether Ronald Hood will be able to assist in his defense at trial of this matter, that he does not have the present ability to consult with his lawyer with a reasonable degree of rational understanding to adequately assist with his defense.").

[22]Following voir dire, the parties had an in-chambers hearing with the trial judge.  At that time, Hood requested trial counsel to reassert a motion to dismiss.  *See* Doc [13-2] at 77-78 ("Your Honor, my client has asked that I re-urge a dismissal of the case on the basis that the material is not, does not meet the definition of sexually explicit material.").

The Petitioner also claims in his state court filings that he tried to get his attorney to enter certain evidence at trial.  *See* Doc. [13-4] at 44, ¶9 (stating that he told trial counsel that two books should be entered into evidence).

counsel was ineffective for failing to investigate the petitioner's mental health and that the trial

judge should have ordered a competency hearing.  381 F.3d 491, 495-96 (5th Cir. 2004).  The

*Roberts* petitioner, presumably overcome with grief from having killed a man, encouraged his

trial attorney to seek the death penalty.  *Id.*  Trial counsel requested and was granted funding for

a psychiatrist to examine the petitioner's mental state.  *Id.*  Upon completion of the examination,

the psychiatrist determined that the petitioner was competent to stand trial and assist in his

defense.  *Id.*  The trial attorney found it unnecessary to request a competency hearing, and the

trial judge did not order one.  *Id.*  The petitioner was ultimately found guilty and sentenced to

death.  *Id.*  On state habeas review, the petitioner argued that his trial counsel was ineffective for

failing to investigate his mental health and that the trial judge should have ordered a competency

hearing.  *Id.*  The state court, however, denied habeas relief.  *Id.* at 496.

　　　　The petitioner then filed a federal habeas petition in the Western District of Texas.  *Id.*

The federal district court found that the state court should have held a competency hearing, and

while the state court's ruling may have been incorrect, it was not unreasonable.  *Id.*  The district

court further found that the petitioner could not establish prejudice for his ineffective assistance

claim in light of the overwhelming evidence of his guilt.  *Id.*  Affirming the district court, the

Fifth Circuit found that trial counsel reasonably relied on the psychiatrist's report to conclude

that the petitioner was competent to stand trial.  The Fifth Circuit stated, in relevant part, as

follows:

> Considering the strong conclusions in Dr. Arambula's report about Roberts's
> mental health, and Dr. Arambula's decision not to request any further information
> regarding Roberts's mental history, [trial counsel] reasonably concluded that
> further investigation of Roberts's mental health history was unnecessary.  This is
> particularly the case here because-like the trial judge who observed Roberts
> throughout the proceedings-[trial counsel] did not believe that Roberts was
> suffering from any mental illness or that Roberts was unable to direct his defense.
> The state habeas court thus reasonably concluded that [trial counsel] did not

provide deficient performance by failing to further investigate Roberts's medical history, and its decision is not contrary to Supreme Court precedent.

*Id*. at 499.

Similar to the attorney in *Roberts*, Hood's trial attorney was able to observe and interact with him and was provided with Dr. Lott's report. With this information available to him, trial counsel apparently determined that it was unnecessary to request a competency hearing. The trial judge, who observed Hood at trial also did not order a competency hearing or otherwise question Hood's ability to stand trial. Thus, based on the current record, Hood fails to show that his trial counsel's decision not to request a competency hearing was unreasonable or that it prejudiced the case. Therefore, he does not satisfy *Strickland*'s two-prong test. More to the point, he does not establish that the Mississippi Supreme Court's application of *Strickland* was unreasonable.

Upon due consideration of the case record and applicable law, the undersigned finds that the Mississippi Supreme Court's ruling as to Hood's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, Hood's request for habeas relief based on counsel's failure to seek a mental competency hearing should be denied.

## RECOMMENDATION

In light of the above analysis, the undersigned recommends that Ronald Hood's Petitions [1][44] for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, as amended and supplemented, be denied and that this case be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 15th day of January, 2014.

/s/**MICHAEL T. PARKER**
UNITED STATES MAGISTRATE JUDGE